# Equitable Life Assurance Society of the United States v. Hall.

(Decided March 20, 1934.)

WILLIAM MARSHALL, BULLITT, BRUCE & BULLITT, and E. B. COCHRAN for appellant.

J. L. HARRINGTON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

On June 1, 1932, the Equitable Life Assurance Society of the United States, hereinafter called the Equitable, issued a group insurance policy to the Consolidation Coal Company, hereinafter called the Coal Company, by the terms of which policy it insured all the employees of the employer, Coal Company, who shall have elected, as certified by the employer to the Insurance Company, to participate in the group life insurance offered to all the employees of the classes specified in the insurance plan. The first clause of the policy provided $2,000 to be paid to the beneficiary of the employee in case of death. The second clause provided for the payment of $36.24 per month for a period of 60 months in the event

of total and *permanent* disability of an employee *under age* 60. Another clause provided for the payment of $12 a week for a period of not more than 13 weeks for *temporary* disability.

Appellee, Jerry Hall, plaintiff below, one of the insured employees of the Coal Company, instituted this suit in the Johnson circuit court alleging in his petition that, while the insurance policy was in effect, on the 30th day of March, 1932, he became totally and permanently disabled by disease of the heart usually termed heart trouble, and general disease of the body, and was totally and permanently prevented from engaging in any work of financial value, and asked that he recover under the total and permanent disability clause of the policy in the sum of $2,174.40. He further alleged that he was over the age of 60 years at the time the Equitable issued to him the policy, but further alleged that his age was known to his employer, the Consolidation Coal Company, and, with this knowledge, the defendants issued the policy and accepted the premiums therefor, and therefore they are estopped to complain of his age. The Equitable denied knowledge of appellee's age, and defended on the ground that he was over the age 60 at the time the policy was issued, and therefore not entitled to recover under the total and permanent disability clause. The trial resulted in verdict and judgment for appellee in the sum of $36.24 per month as stated in that clause of the policy, until the total sum of $2,174.40 shall have been paid, reserving, however, the right of the Equitable to have the case redocketed for the purpose of determining whether or not appellee has recovered from his disability, in which event the payments would be suspended. The Equitable appeals.

It is insisted for appellee that the Consolidation Company, the employer, was the agent of the Equitable, and knowledge of the agent would be imputed to the principal. The court instructed the jury that it could not find for plaintiff unless they believed from the evidence that the defendant through its agents knew the plaintiff was over 60 years of age at the time the policy was issued and with that knowledge issued the policy and received the premium thereon. Obviously the court gave this instruction on the theory that the employer, Consolidation Coal Company, was the agent of the Equitable. We cannot concur in that theory.

Kentucky Statutes, sec. 633, defining who shall be deemed agents, does not apply to employers who obtain group insurance for the benefit of their employees. The state of Arkansas has a statute similar to the Kentucky, statute, supra. In construing the Arkansas statute, the Supreme Court of that state held that the statute did not make the employer the insurance company's agent. Connecticut General Life Ins. Co. v. Speer, 185 Ark. 615, 48 S. W. (2d) 553, 554. The court said:

> "It is sufficient to say that similar contracts of insurance under the group plan have been construed not to constitute the insured [employer] as agent of the insurer to solicit applications for insurance from its employees,"

and citing Duval v. Metropolitan Life Ins. Co., 82 N. H. 543, 136 A. 400, 50 A. L. R. 1276; Leach v. Metropolitan Life Ins. Co., 124 Kan. 584, 261 P. 603. See, also, Joiner v. Metropolitan Life Ins. Co., 40 Ga. App. 740, 151 S. E. 540.

In Duval v. Metropolitan Life Ins. Co., 82 N. H. 545, 136 A. 400, 404, 50 A. L. R. 1276, the court, in considering the argument that the employer was the agent of the insurer, said:

> "The employer holds the master policy, not for, but rather against, the insurer. * * * There is nothing sinister in such a situation. Their interests are not adverse, *but common.* * * * The insurance was something the employer and employees were to obtain by their joint efforts. It was not something the employer was engaged in getting as a representative of the insurer. * * * There is nothing in the situation or conduct of the parties from which an implied general agency on the part of the employer to make representations or waive rights for the insurer could be found."

In the case of Peyton v. Metropolitan Life Ins. Co., 148 So. 721, the Court of Appeals of Louisiana held that the employer's action in carrying the employee on the pay roll from September, 1926, until April, 1931, after he became 60 years of age, did not waive the age 60 provisions of the group policy, and did not work an estoppel against the insurer on the theory of agency.

If the relation of principal and agent exists between any two of the three parties involved, the insurer, the

employer, and employee, it could be more logically said that such agency is between the employer and employee. The employer obtained the insurance for the benefit of its employees. The employer is not interested financially or otherwise in the insurance company, but it is interested in securing the benefits of insurance for its employees. Thus it will be seen that the relation of principal and agent existed between employer and employee and not between employer and insurer.

Moreover, it must be remembered that the contract in issue is one between two parties (Consolidation Coal Company, employer, and the Equitable, insurer) for the benefit of third parties, of which class the plaintiff is one. The plaintiff has the right to sue on such contract, but the rule in such cases is:

"One who sues on a contract made for his benefit must accept the contract as it was made."

Kingsland v. Missouri State Life Ins. Co. (Mo. App.) 66 S. W. (2d) 959, 961; 13 C. J. 712, par. 1819.

The appellee, Hall, was not a party to the contract which was made between his employer and the Equitable for his benefit, and, having accepted the contract, he is bound by the terms thereof as entered into between the contracting parties. He had no contractual relation directly with the Equitable except the individual certificate issued to him based upon the group policy, both of which plainly limited compensation for total and permanent disability to employees under age 60.

It is next insisted that appellant is estopped to defend on the ground of appellee's age because of a pamphlet or book of rules which was distributed by the employer, Coal Company, among its employees, including appellee, wherein it was stated, among other things:

"* * * There is no age limit and every employee on the payroll may secure the insurance regardless of his *occupation*, at a cost which is many times less than the premium for individual insurance."

(Our Italics.) But immediately following the above statement it is further stated in the same book:

"Q. 2. What *benefits* does the employee receive under the plan?

'A. 1. Death Benefit: Payment of full amount of the insurance to the designated beneficiary upon death of the employee, or

"2. Total and Permanent Disability Benefit: If the employee becomes totally and permanently disabled *prior to age* 60, while still insured, the insurance is payable to him in monthly installments, as shown in the following table. Payments are due from the date of total and permanent disability." (Our italics.)

Also under paragraph 6 (b) of the booklet under the heading "Benefits" is the following:

"Total Permanent Disability—In the event of total permanent disability, resulting from bodily injuries or disease, *before the insured employee attains the age of sixty,* no further premium will be collected and the principal sum of the Group Life Insurance will be paid to the insured in monthly instalments of not less than $50.00 each." (Italics ours.)

Appellee stated in his testimony that a representative of the Coal Company, his employer, delivered to him a copy of the booklet above referred to, one or two days before they gave him the policy. He admitted that he read the above-quoted paragraph relating to the total and permanent disability clause limiting such benefits to employees under age 60, and further stated that he read in the policy where it said something about age 60.

According to the fundamental rules of construing documents, we look to the instrument as a whole and not to certain parts or fragments thereof. The insurance policy as a whole is threefold: (1) Life insurance; (2) compensation for *temporary* disability; and (3) compensation for total and *permanent* disability. It is true that there was no age limit respecting the life clause or the *temporary* partial disability clause, but it was plainly stated in the group policy, the individual certificate, and also in the book of rules that compensation for total and permanent disability was limited to employees under age 60. Appellee admits that he read that provision in all the documents—insurance policies and the book of rules. In light of appellee's own testimony, we do not think that he could have been misled.

Moreover, it is not shown that the Equitable had anything to do with the publication and distribution of the pamphlets or books of rules above referred to. The title of the book and all parts of it disclose that it was prepared and distributed by the Consolidation Coal

Company alone. On the front or cover of the book it is entitled "The Consolidation Coal Company, Inc.," and on page 1 it is addressed:

"*To all Employees of* the Consolidation Coal Company and its Subsidiary Companies. * * *"
At the conclusion it is signed:

"Director of Industrial Relations, The Consolidation Coal Co., Inc., Fairmont, West Virginia."

Nothing appears in the booklet to indicate that it was any part of the insurance contract so far as the Equitable is concerned. Even though this were a controversy between appellee and his employer, the Coal Company, the rule book as a whole is clear that compensation for total and permanent disability was limited to employees under age 60. But conceding, for the sake of argument, that the book was misleading and confusing (which we do not think it was), such could not be attributed to the Equitable, because, as above stated, it had nothing to do with the preparation or distribution of the book; therefore it cannot be injected into and made a part of the insurance contract as against the Equitable.

It is a well-settled rule that, in case of ambiguity or uncertainty, that rule more favorable to the insured will be adopted. But it is also true that a policy is interpreted according to its plain meaning, giving effect to all provisions. Haselden v. Home Ins. Co. of N. Y., 247 Ky. 530, 57 S. W. (2d) 459. The rule of liberal construction does not authorize a perversion of language or the exercise of invented powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties, by adding to, or striking from, the conditions of the policy. Fidelity & Casualty Co. of N. Y. v. Bynum, 221 Ky. 450, 298 S. W. 1080; 14 R. C. L. 931.

In view of the facts disclosed in this record, in light of the authorities herein cited, it is our conclusion that appellee is not entitled to recover under the total and permanent disability clause of the insurance policy. It is not necessary to consider other questions raised.

The judgment is reversed and remanded for proceedings consistent with this opinion.