**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0321n.06

Case No. 15-6183

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 14, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PREFERRED AUTOMOTIVE SALES INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| MOTORISTS MUTUAL INSURANCE | ) | KENTUCKY |
| COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: MOORE, SUTTON, and DONALD, Circuit Judges.

SUTTON, Circuit Judge. In 2005, Charles Allen bought a used Mercedes from Preferred Automotive Sales, a Kentucky car dealer, based in part on a promise that the car had not suffered any previous damage. That turned out not to be true. Allen sued Preferred for its misrepresentation, and Preferred asked its insurance company, Motorists Mutual, to defend the lawsuit. Motorists Mutual declined. Did it breach its duty to defend in doing so? No. The parties' insurance policy does not cover this type of lawsuit, one that alleges a misrepresentation caused intangible harm. We affirm the grant of summary judgment to Motorists Mutual.

Preferred obtained its insurance policy from Motorists Mutual in 2004. Motorists Mutual, the policy says, will "defend any 'suit' brought against you by" your customers "that results from damage to 'your product' or 'work you performed.'" R. 20-3 at 16. Preferred

contends that this clause, known as the Auto Dealers Legal Defense Coverage, required Motorists Mutual to defend it against Allen's lawsuit. By refusing, Preferred concludes, Motorists Mutual breached its duty to defend.

We disagree. The provision limits itself by defining the key terms, including most critically the word "suit." A "suit" does not mean, as it might mean in everyday (legal) speech, "[a]ny proceeding . . . against another in a court of law." *Black's Law Dictionary* 1663 (10th ed. 2014). The provision defines "suit" as a specific type of proceeding, one "in which . . . [d]amages because of 'bodily injury' or 'property damage' . . . are claimed." R. 20-4 at 9. "[B]odily injury" and "property damage" in turn mean "tangible" harm, either to the plaintiff's body or to his property. *See id.* at 7, 9. For the duty to defend to kick in, moreover, the "suit" must have been "caused by an 'accident.'" R. 20-3 at 16, 21. Taken together, these limitations mean that Motorists Mutual agreed to defend a lawsuit only when the plaintiff claims some tangible harm caused by an accident.

That is not what Allen claimed. He complained of intangible, consumer-protection harm caused by Preferred's misrepresentation. This entitled him to damages for Preferred's fraud, yes, but it never caused him or his property any physical harm, meaning it's outside this policy's coverage. *See Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582 (6th Cir. 2001). Nor were his damages, tangible or not, "caused by an 'accident'" or "[o]ccurrence." R. 20-3 at 16, 21. In interpreting the accident-or-occurrence requirement under Kentucky law in a comparable duty-to-defend case, we held that a product "defective or faulty" when bought "cannot constitute an 'occurrence' under liability policies triggered by an accident or an occurrence." *Lenning*, 260 F.3d at 583. The Kentucky Supreme Court has come to the same conclusion. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 76 (Ky. 2010). These holdings govern this case. Allen's Mercedes was defective when he bought it. No "accident" caused damage later

on. *Id.* Motorists Mutual as a result justifiably declined to defend Allen's lawsuit. *See id.* at 79–80.

The exclusions to this provision, listing where "[t]his insurance does not apply," R. 20-3 at 16, bolster this conclusion. They say that Motorists Mutual will not defend Preferred's "dishonest" or "fraudulent . . . act[s] or omission[s]" or defend "'[s]uits' brought to enforce a warranty agreement." *Id.* Allen's lawsuit alleged that Preferred sold him a car on a dishonest and fraudulent basis, and he sued because of the warranty Preferred made to him. That means this insurance coverage "does not apply." *Id.*

Preferred resists this conclusion based on the "plain meaning" of the coverage provision, which it reads to "require[] defense of a lawsuit" "brought against Preferred by a customer of Preferred" when the "damage alleged was to Preferred's product." Appellant's Br. 19–20. But this reading is neither plain nor supported by the meaning the policy gives the relevant terms. The argument looks away from the policy's definitions, especially its limited definition of "suit," and it looks away from the provision's requirement that the covered lawsuit must claim damages arising from an "accident." This language is no less a part of the provision's "plain meaning" than any other part of the policy. *See Equitable Life Assurance Soc. of U.S. v. Hall*, 69 S.W.2d 977, 979 (Ky. 1934).

Preferred persists that "suit" means "lawsuit," not the "exact, unmodified definition" the policy provides. Appellant's Br. 19, 25. But we read terms in insurance policies to "mean exactly what [the parties] said" when they defined them. *SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 161 (3d Cir. 1996); *cf. Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 876 (Ky. 2006). That is especially so when the policy tells us, as this one does, to "refer to" the definition section for "words and phrases that appear in quotation marks," R. 20-3 at 16, like the

word "suit." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 391 (6th Cir. 2003).

Just because one quoted phrase ("your product") is not defined, moreover, does not "throw[] into question th[is] very premise." Reply Br. 12. "[Y]our" and "[p]roduct[]" are each defined, R. 20-3 at 20; R. 20-4 at 9, allowing us to easily piece together what "your product" means in the provision.

That this provision falls within an "endorsement"—an add-on to the policy—doesn't throw this conclusion into doubt. R. 20-3 at 11. Endorsements modify some things without modifying all things. *See Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 875 (Ky. 2002). Here, they add some coverage while preserving the policy's limited definition of "suit."

Nor does our reading render this provision lifeless. Yes, two other provisions in the policy, it is true, require Motorists Mutual to defend lawsuits seeking damages for tangible injuries caused by an accident. But these other provisions come with different exclusions and different limitations—and thus cover different lawsuits. Suppose for example that Preferred negligently installed brake pads in its garage business. If the brake pads later failed, injuring the buyer and totaling the car, Motorists Mutual would have a duty to defend that lawsuit—but only under the Auto Dealers Legal Defense Coverage provision. The other provisions would not cover defense of a lawsuit claiming damage caused by the "work performed" in Preferred's "garage business." Appellee's Br. 3. Having three duty-to-defend provisions, all with different scopes, may be a messy way to cover what the parties want covered, but it is not an uncommon way of defining duties in an insurance contract. *See, e.g.*, *Reliable Springs Co. v. St. Paul Fire & Marine Ins. Co.*, 869 F.2d 993, 995–96 (6th Cir. 1989); *cf. Kemper*, 82 S.W.3d at 872–73.

All of this must at least make the policy ambiguous, Preferred pleads, requiring us to consult extrinsic evidence and construe the provision "in favor of Preferred and a finding of coverage." Appellant's Br. 30. Not so. The policy is not ambiguous; it covers lawsuits only when the plaintiff claims tangible harm caused by an accident. *See True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). We thus "may not [] resort[] to" extrinsic evidence or apply an expansive-construction canon. *Cent. Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981); *see U.S. Fid. & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31, 33 (6th Cir. 1988). Preferred's extrinsic evidence does not help it anyway. It just confirms that when an accident causes tangible property damage, Motorists Mutual will defend the lawsuit. No accident caused any tangible damage in Allen's case, allowing Motorists Mutual to decline to defend his lawsuit.

That leaves a procedural wrinkle. The district court granted summary judgment to Motorists Mutual on all of Preferred's claims, not just the ones Motorists Mutual had requested. It's not clear exactly how this happened. District courts typically give "notice and a reasonable time to respond" before granting summary judgment on their own initiative. Fed. R. Civ. P. 56(f). At all events, Preferred has to show "prejudice" to make a remand anything more than "an empty formality." *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 684–85 (6th Cir. 2011) (quotation omitted). It has not done so. Because it did not "articulate" a "distinct factual basis" for any of its claims independent of Motorists Mutual's denial of coverage, the "coverage claims subsume" all other claims. *Id.* at 684. In the last analysis, Preferred does not have any valid claims because its entire case arises out of Motorists Mutual's purported duty to defend, a duty that does not extend to Allen's lawsuit.

For these reasons, we affirm.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** Because the *Allen* lawsuit against Preferred does not claim "[d]amages because of 'bodily injury' or 'property damage,'" R. 20-4 (Garage Form at 17) (Page ID #177), it is not the type of "suit" that is covered by the Auto Dealers Legal Defense Coverage. *See* R. 20-3 (Garage Form Endorsement at 6) (Page ID #157). I accordingly concur in the judgment.

The Auto Dealers Legal Defense Coverage states that Motorists Mutual has a "duty to defend any 'suit' brought against [Preferred] by . . . a customer of [Preferred] that results from damage to 'your product' or 'work you performed.'" R. 20-3 (Garage Form Endorsement at 6) (Page ID #157). A "suit" is defined, however, as "a civil proceeding in which[] [d]amages because of 'bodily injury' or '[damage to or loss of use of tangible property]' . . . to which this insurance applies, are claimed." R. 20-4 (Garage Form at 17) (Page ID #177). The *Allen* lawsuit asserts the following claims against Preferred: (1) willful violations of Kentucky's Consumer Protection Act; (2) fraud; (3) "breach of contract/estoppel/unjust enrichment"; and (4) negligence in selling the automobile. R. 21-2 (*Allen* Compl. at 3–5) (Page ID #205–07). The damages claimed in Allen's lawsuit, accordingly, are because of Preferred's "material misstatements and omissions," *id.* at 3 (Page ID #205), not "because of 'bodily injury' or 'property damage.'" R. 20-4 (Garage Form at 17) (Page ID #177). The district court did not err in granting summary judgment to Motorists Mutual.